UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMCEETEE LLC and SPENCER ALPERT,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>　　　　　Defendant. | CASE NO. C14-898 MJP<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS, PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY |

THIS MATTER comes before the Court on Defendant Nationstar Mortgage LLC's Motion to Dismiss. (Dkt. No. 6.) Having reviewed the Motion, Plaintiff Spencer Alpert's original Response (Dkt. No. 8), Plaintiff Emceetee's original Response (Dkt. No. 9), Nationstar's initial Reply (Dkt. No. 11), Emceetee's Response (Dkt. No. 14), and Nationstar's Reply to Emceetee (Dkt. No. 16), the Court hereby GRANTS the Motion to Dismiss. The Court further DENIES Plaintiff Spencer Alpert's Motion for Leave to File a supplemental response to the motion to dismiss on his own behalf (Dkt. No. 18) and GRANTS Nationstar's Motion to Strike (see Dkt. No. 16) that Response (Dkt. No. 15).

**Background**

Plaintiff Spencer Alpert purchased the subject property (located in Dallas, Texas) in 2006, taking out two mortgage loans from Countrywide. (Compl., Dkt. No. 1-2 at 2.) According to Alpert, at some point one of the loans was paid off. (Id. at 3.) After the loan or loans were transferred to Bank of America, Alpert implies that he ceased making payments. (See id.) (Communications from Nationstar that are referenced in and attached to the Complaint indicate the loan payment had not been made in full since 2009. (Id. at 22.)) Alpert explains that he learned the remaining loan was actually owned by "Deustch[e] Bank" and engaged in "voluminous communications" with Bank of America about the loan. (Id.) He alleges he reached "at different times, agreements" with Bank of America, but does not specify what those agreements consisted of. (Id.) In December 2012 Alpert transferred the property to Emceetee LLC, an entity he describes as a subsidiary of a "family LLC." (Id.)

In June 2013 Alpert and Emceetee LLC received a notice that the loan would be serviced by Nationstar, a "debt collector," starting in July. (Id.; id. at 17.) The notice referred to the loan in a manner that indicates the loan had been securitized. (See id. at 17 ("We look forwarded to servicing your loan on behalf of DEUTSCHE BANK AS TRUSTEE FOR GSAA 2006-16.").) Beginning in July 2013, Alpert attempted to contact Nationstar, Deutsche Bank, and Bank of America "in order to clarify the status of ongoing discussions and negotiations (as well as the latest agreement) with [Bank of America]." (Id. at 3.)

Nationstar sent Alpert a notice updating his "single point of contact" at Nationstar on November 8, 2013 (Dkt. No. 1-2 at 20) and a follow-up letter threatening foreclosure on November 22, 2013. (Dkt. No. 1-2 at 22–25.) Alpert then called the number provided by the letter and followed up via email on December 11, 2013. (See Dkt. No. 1-2 at 27–28.) In the

email, he requested "additional account information" that the November 22 letter informed him he was entitled to, namely, payment history, a copy of the promissory note, the name of the current owner of the note and deed of trust, and copies of any assignments of the note or deed of trust. (See id. at 23; 28.) In addition, he requested "the location of the individual note and identity of the keeper of the vault in which it is located, as well as a copy of any document that exists giving you authority to represent or act on behalf of the Noteholder." (Id. at 28.) Nationstar sent a letter acknowledging Alpert's request on December 13, 2013, stated that Goldman Sachs was the current owner of the loan, and further stated, "In accordance with the Real Estate Settlement Procedures Act (RESPA), a response will be provided within 30 business days, except where otherwise required by state law." (Id. at 33.) Nationstar then responded more fully to Alpert on December 16, 2013, noting that Alpert "appear[ed] to seek certain information pursuant to the Fair Debt Collection Practices Act," and providing payment history from July 5, 2013 through the date of the letter, a copy of the note and deed of trust (security instrument), and the name of the current owner of the note (Goldman Sachs), among other documents, but refusing to provide information about any assignment of the note or mortgage because the requests were "not related to the servicing of your loan and [did] not identify any specific error regarding the servicing of the loan." (Id. at 39–70; Dkt. No. 1-3 at 1–30.)

   Nationstar sent Alpert a default notice on February 28, 2014. (Dkt. No. 1-3 at 47–48.) Plaintiffs filed suit, alleging Nationstar's response to Alpert's December 11 email was insufficient under RESPA and the Fair Debt Collection Practices Act (FDCPA). (Dkt. No. 1-2.) Defendant Nationstar now moves to dismiss the petition for failure to state a claim. (Dkt. No. 6.)

ORDER ON DEFENDANT'S MOTION TO
DISMISS, PLAINTIFF'S MOTION FOR LEAVE
TO FILE SURREPLY- 3

**Discussion**

I. <u>Legal Standard</u>

To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Plausibility does not mean probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Merely reciting the elements of a cause of action will not suffice. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Courts follow a two-step approach when deciding whether a complaint survives a 12(b)(6) motion. <u>Iqbal</u>, 556 U.S. at 678–79. First, "a court must accept as true all of the allegations contained in a complaint" unless the allegations are legal conclusions. <u>Id.</u> Second, the Court must decide whether the claim for relief is plausible—a context-specific task. <u>Id.</u> The Court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" when making its determination. <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

II. <u>FDCPA</u>

Nationstar argues the FDCPA does not apply to Alpert's request because he used the property as an investment property, rather than "primarily for personal, family, or household purpose," as the FDCPA requires. <u>See</u> 15 U.S.C.A. § 1692a(5). (Dkt. No. 6 at 5.) Apart from the fact that Alpert lives in Seattle, the facts that would enable the Court to make this determination are outside the scope of the Complaint.

Assuming for the purposes of this motion that Alpert's debt is subject to the FDCPA, the statute requires only "validation" of the debt, to include:

  (1) the amount of the debt;
  (2) the name of the creditor to whom the debt is owed;
  (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
  (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
  (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g(a).

When Alpert made his December request, he had already received a textbook validation of debt notice from Nationstar on July 12. (See Dkt. No. 1-2 at 18.) Nationstar also provided the more than the minimum requirements under the 9th Circuit's interpretation of the FDCPA when it responded to his email on December 16. (See Dkt. No. 1-2, Ex. G at 49, Dkt. No. 1-3 at 37–43.) See Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173–74 (9th Cir. 2006) ("At the minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.") (quotation marks and citation omitted). Plaintiffs' complaint fails to state a claim under the FDCPA.

  III. RESPA

Nationstar further argues RESPA does not apply to Alpert's mortgage because he is not using it as a residential property. (Dkt. No. 6 at 6.) Again, this may be a valid defense to Plaintiffs' claims, but it concerns facts outside the scope of the complaint.

Assuming for the purpose of this motion that RESPA does apply, the question remains whether Alpert's December 11 email was a "qualified written request" under RESPA. See 12 U.S.C. § 2605(e)(1). In order to constitute a qualified written request, the borrower's written

correspondence with the servicer must be "for information relating to the servicing of such loan" and must "include[ ] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(A), (B)(2).

Alpert's request for back-up documentation regarding the complete chain of custody for the note or mortgage does not relate to the "servicing of the loan." (See Dkt. No. 1-2 at 6–10.) Furthermore, as this Court has repeatedly held, RESPA was not designed to enable borrowers to flood their servicers with requests for securitization documentation unmoored from the borrower's clear obligations with respect to the loan. See Eifling v. National City Mortg., No. 10-cv-5713 RBL, 2011 WL 893233, at *3 (W.D. Wash. March 15, 2011).

Emceetee claims that by acknowledging Alpert's attempt to make a request pursuant to RESPA, Nationstar waived any argument that he was not making a qualified written request. (Dkt. No. 14 at 3.) Emceetee cites no legal precedent for this argument, which would enable borrowers to stretch the statute's boundaries to encompass any irrelevant information the borrower seeks as well as encourage servicers not to respond in good faith to vague or overly broad requests. Nationstar did not waive the argument that Alpert's was not a qualified written request under the statute.

Plaintiffs fail to state a claim under RESPA.

IV.     Leave to File Surreply

The Court gave Emceetee leave to file an additional response because it claimed not to have been properly served. (See Dkt. No. 9, 12.) However, both Alpert and Emceetee filed supplemental responses. (See Dkt. No. 14, 15.) Nationstar moves to strike Alpert's response pursuant to Local Civil Rule 7(g). (Dkt. No. 16.) Alpert the filed a post-hoc motion for leave to file the response (Dkt. No. 18), which Nationstar opposed. (Dkt. No. 19.) Alpert's supplementary

response (Dkt. No. 15) was not authorized by the Court or the Local Rules and the Court therefore STRIKES it.

## Conclusion

Because the Complaint fails to state a claim under RESPA or the FDCPA, Nationstar's Motion to Dismiss is GRANTED. The Court further DENIES Plaintiff Alpert's Motion for Leave to file a supplementary response and GRANTS Nationstar's Motion to Strike the unauthorized supplementary Response.

The clerk is ordered to provide copies of this order to Plaintiff Alpert and all counsel.

Dated this 16th day of September, 2014.

Marsha J. Pechman
Chief United States District Judge